# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

| | |
|---|---|
| RYSE REALTY LLC,<br><br>*Plaintiff,*<br><br><br>-against-<br><br><br>AMGUARD INSURANCE COMPANY,<br><br><br>*Defendant,* | Index # E2024-1238<br><br>**SUMMONS**<br><br><br>Plaintiff designates Sullivan County as the place for trial. The basis of venue is the location of the subject property. |

**TO THE ABOVE-NAMED DEFENDANT:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York) or within (60) days after service of this summons if it is the United States of America; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: July 31, 2024

By:   /s/ Alter J. Rotblat, Esq.
    Alter J. Rotblat, Esq.
    Susan F. Rotblat, Esq.
    *Attorneys for Plaintiff*
    243 Bay 34th St, #1G
    Brooklyn, NY 11214
    (516) 554-4713
    rotblatlaw@gmail.com

**Plaintiffs' Address:**

RYSE Realty LLC
20905 Boca Ridge Dr. W.
Boca Raton, FL 33428

**Defendant's Address:**

AmGUARD Insurance Company
P.O. Box AH
39 Public Square
Wilkes-Barre, PA 18703

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

---

RYSE REALTY LLC,

                                        *Plaintiff,*

                    -against-

AMGUARD INSURANCE COMPANY,

                                        *Defendant,*

---

Index # E2024-1238

**COMPLAINT
AND
JURY DEMAND**

Plaintiff RYSE REALTY LLC ("Plaintiff") by and through its undersigned attorney,

allege against Defendant AMGUARD INSURANCE COMPANY ("Defendant") as follows:

## NATURE OF ACTION

1.      This action is for breach of contract and breach of the implied covenant of good faith and

fair dealing arising out of Defendant's unjustified refusal to provide coverage and pay

under an insurance policy it sold to Plaintiff.

## THE PARTIES

2.      Plaintiff is, and at all relevant times hereinafter mentioned was, a domestically filed New

York limited liability company that owned certain real property located at 75 South

Maplewood Road, Monticello, NY 12701 ("Property" or "Premises").

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 5 of 97

3.      Defendant is, and at all relevant times hereinafter mentioned was, an insurance business corporation organized under and pursuant to the laws of the State of Nebraska with a principal place of business located at 16 South River Street, Wilkes-Barre, Pennsylvania 18703.

4.      Defendant is a wholly-owned subsidiary of WestGuard Insurance Company, which is a wholly-owned subsidiary of National Indemnity Company, which is a wholly-owned subsidiary of Berkshire Hathaway Inc. Ie. Defendant is a part of the Berkshire Hathaway Group.

5.      At all times hereinafter mentioned, Defendant was duly authorized and licensed to underwrite insurance policies in New York State, including the insurance policy at issue in this litigation, and to conduct an insurance business as defined in the Insurance Laws of the State of New York.

## JURISDICTION AND VENUE

6.      Defendant is subject to jurisdiction in this County because it purposefully avails itself by conducting business, and transacting in this County.

7.      In particular, Defendant insured the property located within this County at the time of the event giving rise to the claims.

8.      Venue is proper in this Court in that the breach of contract occurred in this County.

## FACTUAL BACKGROUND

9.      Plaintiff owned and operated a rental property located at 75 S. Maplewood Road, Monticello, New York 12701.

10. Plaintiff purchased from Defendant an insurance policy, Policy No. RYHO382994 effective August 3, 2022 to August 3, 2023 (the "Policy"). See Insurance Policy Contract attached hereto as Exhibit "**A**."

11. The Property was successfully rented throughout the year primarily using Airbnb, an online platform that connects people who want to rent out their property with people who are looking for accommodations.

12. Plaintiff's specifically obtained coverage for damages and loss of use for the rental property since they held this property as a rental investment property. Specifically, in the event of damage to the property, and it could not be rented, Defendant would pay Plaintiff costs to repair the property and loss of rents.

13. On or around August 15, 2022, during a summer rental, an event occurred at the Property causing extensive damage and making the Property uninhabitable.

14. Due to the damage Plaintiff had to cancel all future and upcoming rentals.

15. The damage suffered by Plaintiff is covered under the terms of the Policy.

16. Plaintiff made a timely claim, and claim number GHAG22090140 was assigned (the "Claim").

17. North American Risk Services ("NARS"), a third party administrator for Defendant, contacted Plaintiff and informed them that they would be handling the Claim.

18. Plaintiff complied with all terms and conditions of the Policy and ensuing investigations.

Case 7:24-cv-07153-NSR-JCM   Document 1-1   Filed 09/20/24   Page 7 of 97

19.     During the investigations and inspections, Plaintiff provided Defendant with all requested information and documentation.

20.     On or around October 2022, Plaintiff received a check from the Defendant for One Thousand Eight Hundred Twenty Five Dollars and Eighty Seven Cents ($1,825.87).

21.     Plaintiff provided Defendant with an estimate from a contractor which assessed the total Property damages to more than Sixty Three Thousand Dollars ($63,000).

22.     Admitting that they severely underpaid the claim, Defendant requested a reinspection to which Plaintiff fully complied.

23.     Instead of conducting an impartial reinspection, Defendant's desk adjuster and field adjuster improperly colluded together to create a fake estimate.

24.     Plaintiff found out about the improper collusion, when they were included in an email chain between the NARS desk adjuster and the field adjuster in which the supposed independent adjusters discussed what they want the reinspection results to yield.

25.     Defendant did not communicate with Plaintiff as to the result of their reinspection.

26.     Instead, Defendants purposefully delayed paying Plaintiff for over seven months.

27.     Over seven months later, on or around April 2023, Plaintiffs received a supplemental check for Twelve Thousand Sixty Three Dollars and Eighty Nine Cents ($12,063.89).

28.     Plaintiff has made numerous attempts to resolve this matter in good faith. However, Defendant refused.

29.     Defendant's failure to timely and fully pay the claim prevented Plaintiff from making necessary repairs to the property.

30.     Defendant admitted to owing Plaintiff money for lost rents, but has refused to tender payment.

31.     Defendant breached the Policy by failing to provide full coverage for the claim and blatantly disregarding their obligations and Plaintiff's rights.

32.     To date, Defendant has not fully paid Plaintiff as required under the Policy.

33.     Defendant's bad faith handling of Plaintiff's claim made it impossible for Plaintiff to make necessary repairs and thus the property could not be rented.

34.     Defendant acted in bad faith by refusing to pay and purposefully delaying the handling of the claim.

35.     Defendant's purposeful delay caused Plaintiffs to lose over seven months of rent.

36.     In May 2023, as a direct and proximate cause of Defendants' delay, Plaintiff was forced to sell the property at a big loss.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

37.     Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 36 of the Complaint as if fully set forth herein and further states as follows.

38.     The Policy constitutes a valid contract of insurance coverage between Plaintiff and Defendant.

39. The damages suffered by Plaintiff at the Property are covered under the Policy and are not otherwise excluded.

40. Under the Policy, Defendant was / is required to pay the Claim.

41. Plaintiff has complied with all terms, conditions, or prerequisites set forth in the Policy.

42. Defendant has breached its obligations under the Policy by refusing to pay the Claim.

43. As a result of Defendant's breach of its obligation under the Policy, Plaintiff has suffered, and continues to suffer, damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

44. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 43 of the Complaint as if fully set forth herein and further states as follows.

45. New York law imposes on Defendant an implied covenant of good faith and fair dealing in connection with the Policy.

46. Defendant has breached said implied covenant of good faith and fair dealing in one or more of the following ways:

   a. By arbitrarily, and with reckless disregard for the rights of Plaintiff, refusing to acknowledge coverage and effectuate prompt, fair, and equitable settlement of the Claim;

   b. By unreasonably failing to honor its obligations under the Policy;

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 10 of 97

    c.  By ignoring the evidence provided by Plaintiff that demonstrates the nature, extent, and cause of damage; and

    d.  By forcing Plaintiff to sue for coverage.

47.  Plaintiff has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

48.  Plaintiff is entitled to consequential damages flowing from Defendant's violation of the implied covenant of good faith and fair dealing, including, without limitation, the loss and costs Plaintiff incurred from the sale of the Property, prejudgment interest on the amount owed under the Policy, and the attorneys' fees, costs, and disbursements incurred by Plaintiffs in enforcing its rights as a consequence of Defendant's bad faith conduct.

49.  Consequential damages for bad faith breach of the Policy were reasonably contemplated by the Parties at the time they entered into the Policy.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

    A.  On the First Claim for Relief, an award in favor of Plaintiff and against Defendant for compensatory, direct and consequential damages in an amount to be determined at trial;

    B.  On the Second Claim for Relief, an award in favor of Plaintiff and against Defendant for compensatory, direct and consequential damages, including, without limitation, attorneys' fees and costs, in an amount to be determined at trial;

    C.  On all Counts: (i) pre- and post-judgment interest; (ii) costs, disbursements and attorneys' fees; and (iii) such other and further relief as this Court deems just and proper.

Case 7:24-cv-07153-NSR-JCM     Document 1-1     Filed 09/20/24     Page 11 of 97

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all Counts so triable.

Dated: July 31, 2024

By:   /s/ Alter J. Rotblat, Esq._____
Alter J. Rotblat, Esq.
Susan F. Rotblat, Esq.
*Attorneys for Plaintiff*
243 Bay 34th St, #1G
Brooklyn, NY 11214
(516) 554-4713
rotblatlaw@gmail.com

# Exhibit

# "A"



**P.O. Box AH • 39 Public Square**
**Wilkes-Barre, PA 18703-0020**
**Toll-Free 1-800-673-2465**
**FAX: 570-820-7968**
**www.guard.com**

06/14/2022

Ryse Realty LLC
20905 Boca Ridge Dr W
Boca Raton, FL 33428

**Policy #: RYHO382994**

**Re:  Homeowners Special Provisions – New York Endorsement**

Dear Policyholder:

We recently issued to you your new Homeowner's  policy underwritten by AmGUARD Insurance Company, a member of Berkshire Hathaway GUARD Insurance companies. Due to a system error, your Homeowners' Special Provisions - New York Endorsement ("Endorsement") was not attached to your insurance policy package. Please find enclosed a copy of the Endorsement. The Endorsement  is effective as of the same date as your current Homeowner's  insurance policy inception date.

Please be sure to thoroughly review the Endorsement and store this with your policy documents. Please note there is no impact to your policy premium.

We are sorry for any inconvenience this may have caused you. If you have any questions, please contact our Customer Service Center from Monday through Friday, 8:00 AM to 7:30 PM EST in one of the following ways:

- Call us toll-free at 1-800-673-2465
- E-mail us at csr@guard.com
- Chat with us online via our *Policyholder Service Center* at https://policyholder.guard.com

As always, we appreciate your business.

Sincerely,

Berkshire Hathaway GUARD Insurance Companies

Enclosure

© January 2021-2022. Homeowners policies are underwritten by AmGUARD Insurance Company, a member of Berkshire Hathaway GUARD Insurance Companies with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701.



**www.guard.com**

In cooperation with
**MBIA LLC**

**Ryse Realty LLC**
**20905 Boca Ridge Dr W**
**Boca Raton, FL 33428**

Policy Number: RYHO382994
Customer Number: 9169512
Insurance Company: AmGUARD Insurance Company
Effective Date: 08/03/2022

## Homeowners Policy Renewal Offer

We are pleased to offer to renew your policy. The policy is underwritten by AmGUARD Insurance Company, a member of Berkshire Hathaway GUARD Insurance Companies.

**EASY ways to pay:**
1. **Online** via our **Policyholder Service Center (PSC)** – www.guard.com/psc/
2. By setting up automatic **Direct Draft** payments through the **PSC** > Billing & Payments section
3. Through our **BHGUARD mobile app** – Find us on the App Store and Google Play!
4. **By phone** – Call our Customer Service Center Monday through Friday, 8:00 AM to 7:30 PM at **800-673-2465** to pay via credit card or direct draft from your bank account.

**Manage your policy online through our Policyholder Service Center (PSC) and BHGUARD mobile app.**
In addition to making payments, you can:
- view and print policy documents
- review our value-added services
- find information to report a claim (use our app to upload photos and documents)
- go paperless – set up electronic document delivery

If you haven't already done so, register now at **www.guard.com/pscregister.**

**Who to Contact**
- For coverage changes, policy provisions, etc. call your insurance agent at 845-796-1500.
- With questions about billing, claims, and other services, contact us by phone at 800-673-2465, fax at 570-823-2059, email at csr@GUARD.com, or chat with us online through our **PSC**.
- To report fraud or suspicious activity, contact our Fraud Investigative Unit at 800-673-2465, ext. 8477 (TIPS) or via email at fraudsiu@guard.com.
- To **Report a Claim 24/7,** call 888-NEW-CLMS. Upload claims documents and photos using our **mobile app** or online at our **PSC.**

 If you are enrolled in direct draft, payroll billing, or any other type of automated billing, your payment will be sent to us automatically. Otherwise, please review the payment options available above under **EASY ways to pay.** A billing statement, sent separately, will have additional information. Please note payment is required to maintain uninterrupted insurance coverage.

We appreciate your business and look forward to serving your insurance needs for another year!

Register for our Policyholder Service Center at www.guard.com/pscregister/ or download the BHGUARD app today!    **POLICYHOLDER SERVICE CENTER**   

enclosed: Homeowners Policy #*RYHO382994*

**The Security You Need.  The Name You Trust.**

HQ : NY/HO
DECTOI

# DOWNLOAD OUR MOBILE APP!
## Policyholder Service Center





**Register Today!**

www.guard.com/pscregister/

## We value our policyholders, so we take advantage of technology to offer fast and easy online self-service solutions.

Available from www.guard.com/pscregister/ or mobile app, our *Policyholder Service Center* is the gateway to a wide range of resources used by our customers to manage their insurance with us. From reporting a claim to making a payment online to reviewing helpful loss control information, our service center is designed to offer convenient access to the tools you use most!

Our BHGUARD mobile app offers many of the same features with the latest technology always in mind. Get the app on Google Play or download from the Apple App Store, today! **Need help? Contact 1-800-673-2465 or csr@guard.com.**

### ACCOUNT MANAGEMENT
> View and print policy documents
> Generate a Certificate of Insurance (COI)
> Download loss control materials
> Search our video library
> Chat online with a representative
> Go paperless
> Access other news and resources

### BILLING & PAYMENTS
> Make a credit card payment
> Transfer funds from your bank
> Submit multi-policy payments
> Set up re-occurring payments
> View billing history

### CLAIMS
> Report a new claim
> Upload photos and documents
> View policy loss history
> Monitor the status of a claim
> Chat with an adjuster

### COVERAGE-SPECIFIC FEATURES

**Workers' Compensation**
- Find a physician
- Complete a premium audit
- Download state posting notices
- Implement a return-to-work program
- Report payroll (self-reporting policy)

**Commercial Auto**
- Access vehicle insurance ID cards
- View all vehicles under a policy

**Visit www.guard.com/pscregister/ or download the BHGUARD app today!**









Some features and resources are only available for specific lines of insurance. Not all features may be currently available on the mobile app. Insurance is underwritten by AmGUARD Insurance Company®, AZGUARD™ Insurance Company (non-admitted in California), EastGUARD Insurance Company®, NorGUARD Insurance Company® or WestGUARD® Insurance Company, members of Berkshire Hathaway GUARD Insurance Companies ("GUARD") with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701.

SSPSC052721

## OUR SERVICES
# Claims Reporting



We encourage policyholders to inform us of incidents, accidents, and potential claims as soon as possible so that we can get right to work! Prompt reporting can be key to a successful resolution. Only the administration of emergency care comes first.







### WAYS TO REPORT A CLAIM

**Call 1-888-NEW-CLMS**
(1-888-639-2567)

Log into our *Policyholder Service Center* at guard.com/pscregister

Get the BHGUARD app from the App Store or Google Play

Visit guard.com to complete an online form

### HELPFUL INFORMATION FOR EXPEDITING YOUR CLAIM

- Policy number
- Description of how, when, and where the incident occurred
- Names, addresses, phone numbers of any injured/involved parties or witnesses
- The insured driver's name, address, phone number (for Commercial Auto claims)
- The employer's tax ID number, the injured/ill employee's SSN and personnel file and any accident reports (for Workers' Compensation claims)
- Legal correspondence (for Liability claims)
- Special forms for Disability claims available on guard.com

### TIPS FOR CONTROLLING THE LOSS

> Take reasonable steps to protect any covered persons, property, autos, etc., from immediate further harm or damage and keep a record of any expenses incurred in the process for consideration in the settlement. If possible, set property aside for examination.

> Allow our adjusters to officially inspect the property/auto before any non-immediate repairs or disposition take place.

> Promptly notify the police of any stolen property or suspected illegal activity.

> Preserve any closed-circuit surveillance video.

> If possible, photograph the scene; cell phone pictures can be helpful.

### CONTACT US
**1-888-NEW-CLMS**
GUARDClaimsTeam@guard.com
Fax: 570-825-0611

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368

Insurance may be underwritten by AmGUARD Insurance Company®, AZGUARD™ Insurance Company, EastGUARD Insurance Company®, NorGUARD Insurance Company®, or WestGUARD® Insurance Company, members of Berkshire Hathaway GUARD Insurance Companies ("GUARD") with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701. All claims will be evaluated upon submission. We will not pay for any subsequent loss or damage resulting from an occurrence that is not a "Covered Cause of Loss." Only the relevant insurance policy and endorsements can provide the actual terms and conditions for an insured. Some restrictions, all state laws, and all company claims/underwriting guidelines apply. © May 2021.

CLRP052721

## NUESTROS SERVICIOS
# Reporte de Reclamos


Berkshire Hathaway
**GUARD** Insurance Companies

Alentamos a los tenedores de pólizas a que nos informen de incidentes, accidentes y reclamos potenciales lo antes posible, para que ponernos a trabajar inmediatamente. Una rápida denuncia puede ser importante para una resolución exitosa. Únicamente la administración de la atención de emergencias es más importante.

### FORMAS DE DENUNCIAR UN RECLAMO



 **Llame al 1-888-NEW-CLMS**
(1-888-639-2567)

 Regístrese en nuestro Centro de Servicio a tenedores de pólizas en guard.com/pscregister

 Obtenga la aplicación BHGUARD en la App Store o de Google Play

 Visite guard.com para completar el formulario online

### INFORMACIÓN ÚTIL PARA ACELERAR SU RECLAMO

- Número de póliza
- Descripción acerca de cómo, cuándo y dónde ocurrió el incidente
- Nombres, direcciones, números telefónicos de alguna de las partes involucradas/lesionadas o de testigos
- El nombre, dirección, número telefónico del conductor asegurado (para reclamos comerciales de vehículos)
- El número federal del negocio, el número de seguro social del empleado enfermo/lesionado y el archivo personal y cualquier denuncia de accidente (para el reclamo de indemnización del empleado)
- Correspondencia legal (para reclamos de responsabilidad)
- Formularios especiales para reclamos por discapacidad disponibles en guard.com

### CONSEJOS PARA CONTROLAR LAS PÉRDIDAS

> Dé pasos razonables para proteger a cualquier persona, propiedad, vehículos, etc. cubiertos, de un daño mayor o perjuicio inmediato y lleve un registro de cualquier gasto en el que incurra en el proceso para su consideración en el acuerdo. De ser posible, reserve la propiedad para su examen.

> Permita que nuestros ajustadores inspeccionen de manera oficial la propiedad/vehículo antes de dar lugar a cualquier reparación o disposición de carácter no inmediato.

> Notifique inmediatamente a la policía acerca de la propiedad robada o de sospecha de actividad ilegal

> Preserve cualquier video de circuito cerrado de vigilancia.

> De ser posible, tome fotografías de la escena; las fotos del teléfono celular pueden ser útiles.

### CONTÁCTENOS
**1-888-NEW-CLMS**
GUARDClaimsTeam@guard.com
Fax: 570-825-0611

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368

El seguro podrá ser cubierto por AmGUARD Insurance Company®, EastGUARD Insurance Company®, NorGUARD Insurance Company®, WestGUARD® Insurance Company, o AZGUARD™ Insurance Company, miembros de las Compañías de Seguros Berkshire Hathaway GUARD (BHGIC) con sede central en 39 Public Square, Wilkes-Barre, PA 18701. Todos los reclamos serán evaluados una vez presentados. No pagaremos ninguna pérdida o daño sobreviniente como consecuencia de un incidente que no configure una «Causa de pérdida cubierta». Únicamente las pólizas de seguro y los endosos relevantes pueden proporcionar los términos y condiciones efectivos a un asegurado. Son aplicables algunas restricciones, todas las leyes estatales y todos los reclamos de empresas/guías de cobertura. © BHGIC 2020.

CFES052821

**HOMEOWNERS**
**HO P 004 05 11**

# LIMITED HOME DAY CARE COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

---

**CAUTION:** This is a summary of the limited coverage provided in your Homeowners Policy for Home Day Care services. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverage you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF YOUR POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.**

---

**A.** "Business", as defined in the policy, means:

    **1.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    **2.** Any other activity engaged in for money or other compensation, except the following:

        **a.** One or more activities:

            **(1)** Not described in **b.** through **d.** below; and

            **(2)** For which no insured receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

        **b.** Volunteer activities for which no money is received, other than payment for expenses incurred to perform the activity;

        **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        **d.** The rendering of home day care services to a relative of an insured.

**B.** If you or any other insured regularly provides home day care services to a person or persons other than you or any other insureds as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not your or any other insured's given trade, profession or occupation but is an activity:

    **1.** That you or any other insured engages in for money or other compensation; and

    **2.** From which you or any other insured receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

    the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

    **1.** Described in **A.2.** above; and

    **2.** Engaged in for money by you or any other insured;

    may be considered a "business" if the $2,000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

    **1.** Does not provide:

        **a.** Section **II** coverages. This is because your "business" or the "business" of any other insured is excluded under Section **II** – Exclusions;

        **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 19 of 97

2. Limits Section **I** coverage, under Coverage **C** – Special Limits Of Liability, for "business" property:

   a. On the residence premises for the home day care "business" to $2,500. This is because Coverage **C** – Special Limits Of Liability imposes that limit on "business" property on the residence premises;

   b. Away from the residence premises for the home day care "business" to $1,500. This is because Coverage **C** – Special Limits Of Liability imposes that limit on "business" property away from the residence premises. This limit does not apply to antennas, tapes, wires, records, disks or other media that are:

      **(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

      **(2)** In or upon a motor vehicle.



**P.O. Box A-H**
**Wilkes-Barre, PA 18703-0020**
**570-825-9900**
**800-673-2465**
**www.guard.com**

# PRIVACY POLICY

Rev. February, 2020

## WHAT DO BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

| **FACTS** | Berkshire Hathaway GUARD Insurance Companies include: AmGUARD Insurance Company, AZGUARD Insurance Company, EastGUARD Insurance Company, NorGUARD Insurance Company, WestGUARD Insurance Company, GUARDCo, Inc., (a medical management affiliate). |
|---|---|
| **Why?** | Financial Companies choose how they share your personal information. Federal and State law gives consumers the right to limit some, but not all, sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend upon the product or service you have with us. This information can include:<br>• **Social Security Number, date of birth, driving record, income**<br>• **Credit history, credit-based insurance scores, insurance claim history, payment history**<br>When you are no longer our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies may need to share customers' personal information to run their everyday business. In the section below, we list the reasons insurance companies share their customers' personal information; the reasons we choose to share; and whether you can limit this sharing. |

| **REASONS WE CAN SHARE YOUR PERSONAL INFORMATION** | **Does Berkshire Hathaway GUARD share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes–**<br>such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, comply with government agency examinations/procedures, or report your creditworthiness. | Yes | No |
| **For our marketing/processing purposes–**<br>to offer our products and services to you.<br>(We may also disclose information received from you with companies that perform services for us.) | Yes | No |
| **For our affiliates' everyday business purposes–**<br>information about your transactions and experiences. | Yes | No |
| **For our affiliates' everyday business purposes–**<br>information about your creditworthiness. | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | Yes | Yes |

| **To limit our sharing** | Call Customer Service at 1-800-673-2465 or visit us online at www.guard.com/privacy/.<br><br>Please note: If you are a new customer, we can begin sharing your information 30 days from the date we provided this notice. When you are no longer our customer, we continue to share your information as described in this notice in accordance with applicable law. However, you can contact us at any time to limit our sharing in accordance with the table above. |
|---|---|
| **Questions?** | Call Customer Service at 1-800-673-2465. |

Includes Copyrighted Material of the National Association of Insurance Commissioners
BHGIC-672-02-20

**PAGE 2**

| Who we are | |
|---|---|
| **Who is providing this notice?** | Berkshire Hathaway GUARD Insurance Companies (including property and casualty licensees AmGUARD Insurance Company, AZGUARD Insurance Company, NorGUARD Insurance Company, EastGUARD Insurance Company, and/or WestGUARD Insurance Company as well as GUARDCo, Inc.) is providing this notice. References in this form to "us", "we" or "our" refers to these companies. |

| What we do | |
|---|---|
| **How do we protect your personal information?** | To protect your personal information from unauthorized access and use, we implement security measures that comply with applicable law. These measures include computer safeguards and secured files and buildings. |
| **How do we collect your personal information?** | We collect your personal information, for example, when you:<br>• apply for insurance<br>• pay insurance premiums<br>• file an insurance claim<br>• give us your income information<br>• give us your contact information.<br><br>We also collect your personal information from others (such as credit bureaus, affiliates, or other companies) including, for example, from:<br>• your insurance agent or producer<br>• your transactions with our affiliates listed below or other consumer reporting agencies. |
| **Why can't I limit all sharing?** | Applicable law gives you the right to limit only:<br>• sharing for affiliates everyday business purposes – information about your creditworthiness and insurability<br>• affiliates from using your information to market to you<br>• sharing for non-affiliates to market to you. |
| **What happens when I limit sharing for a policy I hold jointly with someone else?** | Your choices will apply to everyone on your policy. |

| Definitions | |
|---|---|
| *Affiliates* | Companies (other than the companies identified in "Facts" above) that are related to us by common ownership or control of Berkshire Hathaway Inc. Affiliates can be financial and nonfinancial companies. |
| *Non-affiliates* | Companies not related to us by common ownership or control, which can be financial and nonfinancial companies. |
| *Marketing* | The promotion or advertising of insurance products or services to you. Marketing partners may include, but are not limited to, insurance licensees such as insurance agents appointed by us or their affiliates. |

| Other Important Information |
|---|
| **Important Information about Credit Reporting:** We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report. |
| **For California Residents:** If you opt out, we will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account. Please visit www.guard.com/privacy-policy/ to review our California Privacy Policy. |
| **For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. |

Includes Copyrighted Material of the National Association of Insurance Commissioners    BHGIC-672-02-20

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Berkshire Hathaway**
**GUARD** Insurance Companies

**HOMEOWNERS POLICY**
**DECLARATIONS**

## AmGUARD Insurance Company – A Stock Company
## P.O. BOX AH • 39 Public Square • Wilkes-Barre, PA 18703-0020

**Issued:** 06/14/2022

**Policy No.:** RYHO382994                    **Renewal of:** RYHO216771

### POLICY INFORMATION PAGE

**[1]   Named Insured and Address**

|   |   |
|---|---|
| Named Insured: | Ryse Realty LLC |
| Residence Premises: | 75 S Maplewood Rd, Monticello, NY 12701-4162 |
| Mailing Address: | 20905 Boca Ridge Dr W, Boca Raton, FL 33428-1462 |

**[2]   Agency**
MBIA LLC, 67 East Broadway, Monticello, NY 12701,

**[3]   Policy Period**
**From** August 3, 2022 to August 3, 2023, 12:01 AM standard time at the residence premises

**[4]   Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements**.
Coverage is provided where a premium or limit of liability is shown (below) for the coverage.

| Section I |  Limits of Liability |  |
|---|---|---|
| A. Dwelling | $ 398,305 | |
| B. Other Structures | $ 39,831 | |
| C. Personal Property | $ 39,831 | |
| D. Loss of Use | $ 119,492 | |
| **Section II** | | |
| E. Personal Liability | $ 1,000,000 | Each Occurrence |
| F. Medical Payments to Others | $ 5,000 | Each Person |

**[5]   Premium**

| | |
|---|---|
| Basic Policy Premium | $ 1,311.00 |
| Additional Premium Charges Related to Other Coverages or Endorsements<br>This amount is the total of the premium for all additional optional charges; the individual coverages and charges are shown on the next page.) | $ 727.00 |
| **Total Premium** | $ 2,038.00 |

In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.

**HO DEC NY 04 22**                                                                                    **Page 1 of 9**

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 24 of 97

HOMEOWNERS POLICY
DECLARATIONS

Issued: 06/14/2022

**Policy No.:** RYHO382994                    **Effective Date:** 08/03/2022

**Deductible:**

**Section I:** $ 1000                          **Other:** Same as All Peril

**Windstorm (All)**                                    Same as All Peril

**Catastrophe**                                        N/A

## ADDITIONAL PROTECTION ELECTED

| COVERAGE | LIMIT | PREMIUM |
|---|---|---|
| **Animal Liability** | | |
| Aggregate sublimit (exclusions still apply) | 100,000 | |
| **Business Entity - Coverage Endorsement** | | 79.00 |
| Business Entity - Coverage Endorsement | Included | |
| **Business Property** | | |
| Off-Premises Limit | 1,500 | |
| On-premises Limit | 2,500 | |
| **Coverage C - Other Residences** | | |
| Limit | 3,983 | |
| **Coverage C - Self-storage Facilities** | | |
| Limit | 3,983 | |
| **Coverage C - Special Limits of Liability** | | |
| Jewelry, Watches and Furs Limit | 1,500 | |
| Money Limit | 200 | |
| Securities Limit | 1,500 | |
| Silverware, Goldware & Pewterware Limit | 2,500 | |
| Firearms Limit | 2,500 | |
| Portable Electronic Equipment in or upon a motor Vehicle Limit | 1,500 | |
| **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money Coverage** | | |
| Limit | 1,000 | |
| **Damage to Property of Others** | | |
| Limit | 1,000 | |
| **Debris Removal** | | |
| Limit | 5%/1,000 | |
| **Dwelling Rental Activities** | | 528.00 |
| Dwelling Rental Activities | Included | |
| **Fire Department Service Charge** | | |
| Limit | 500 | |
| **Grave Markers** | | |
| Limit | 5,000 | |
| **Home Systems Protection Coverage** | | 30.00 |
| Limit | 50,000 | |
| **Landlord's Furnishings** | | |
| Limit | 2,500 | |
| **Service Line Coverage** | | 30.00 |
| Limit | 10,000 | |
| **Supplemental Loss Assessment Coverage** | | |

**HO DEC NY 04 22**                                                      **Page 2 of 9**

**HOMEOWNERS POLICY
DECLARATIONS**

Issued: 06/14/2022

| | |
|---|---|
| **Policy No.:** RYHO382994 | **Effective Date:** 08/03/2022 |

| | | |
|---|---|---|
| Residence Premises Limit | 1,000 | |
| **Trees, Shrubs and Other Plants** | | |
| Limit | 5%/500 | |
| **Water Backup & Sump Overflow** | | 60.00 |
| Limit | 5,000 | |
| **Workers' Compensation Endorsement** | | |
| Limit | Included | |

**HO DEC NY 04 22**                                                **Page 3 of 9**

**HOMEOWNERS POLICY
DECLARATIONS**

Issued: 06/14/2022

| | |
|---|---|
| **Policy No.:**  RYHO382994 | **Effective Date:**  08/03/2022 |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| HO COV LETTER | Special Cover Letter |
| HO P 004 05 11 | LIMITED HOME DAY CARE COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| HO PRIV POL | PRIVACY POLICY |
| IL P 001 01 04 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ('OFAC') ADVISORY NOTICE TO POLICYHOLDERS |
| HO DEC NY 04 22 | HOME OWNERS POLICY DECLARATIONS - NEW YORK |
| HO 00 03 05 11 | HOMEOWNERS 3 - SPECIAL FORM |
| HO 131 01 03 20 | New York Special Provisions |
| HO 04 46 10 00 | INFLATION GUARD |
| HO 04 53 10 00 | CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE |
| HO 06 49 10 15 | BROADENED RESIDENCE PREMISES DEFINITION ENDORSEMENT |
| HO 06 53 02 17 | HOME-SHARING HOST ACTIVITIES AMENDATORY ENDORSEMENT |
| HO 131 92 08 19 | Dwelling Rental Coverage Endorsement |
| HO 23 85 05 15 | Limited Water Back-up and Sump Discharge or Overflow Coverage - New York |
| HO 24 93 05 02 | Workers' Compensation Endorsement |
| HO 34 02 02 17 | AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT |
| HO 99 83 08 17 | PROTECTIVE DEVICES |
| HO 99 89 06 17 | SERVICE LINE COVERAGE |
| HO 99 90 06 17 | HOME SYSTEMS PROTECTION |
| HO 99 94 06 17 | BUSINESS ENTITY - COVERAGE ENDORSEMENT |
| HO FCRA | Notice of Consumer Rights Under the Fair Credit Report Act |
| IL 99 00 08 13 | Authorization and Attestation |

**HO DEC NY 04 22**

**Page 4 of 9**

**HOMEOWNERS POLICY**
**DECLARATIONS**

Issued: 06/14/2022

**Policy No.:** RYHO382994          **Effective Date:** 08/03/2022

**SECTION II – LIABILITY COVERAGES  (of the policy):  OTHER INSURED LOCATIONS**

**Address(es)**

**MORTGAGEE(S)/LIENHOLDER(S)**

| **Name** | **Address** | **Loan Number** |
|---|---|---|

**LOSS PAYEE(S) – PERSONAL PROPERTY**
(Name and Address of Loss Payee and Personal Property Involved)

| **Name** | **Address** | **Personal Property** |
|---|---|---|

**HO DEC NY 04 22**          **Page 5 of 9**

FILED: SULLIVAN COUNTY CLERK 07/31/2024 02:40 PM
NYSCEF DOC. NO: 1

**HOMEOWNERS POLICY
DECLARATIONS**

Issued: 06/14/2022

**Policy No.:**  RYHO382994                                        **Effective Date:**  08/03/2022

## PROTECTIVE DEVICES

As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request.

**Name of Device**

Fire Alarm: Local/Smoke Detector

**HO DEC NY 04 22**                                                                **Page 6 of 9**

**HOMEOWNERS POLICY
DECLARATIONS**

Issued: 06/14/2022

**Policy No.:** RYHO382994                          **Effective Date:** 08/03/2022

## RATING CHARACTERISTICS

**Construction:** Frame

**Year Built:** 1960

**Number of Stories:**

**Square Footage:** 1319

**Roof Age:** 10

**Protection Class:** 5Y

**Roof Type:** Composition - 3 Tab Shingle

**Number of Losses Last three years:** 0

**Burglar Alarm Type:** none

**Fire Alarm Type:** Local

**Sprinkler System:** No

**Occupancy Type:** Landlord/Held for Rent

**HOMEOWNERS POLICY**
**DECLARATIONS**

Issued: 06/14/2022

**Policy No.:** RYHO382994 | **Effective Date:** 08/03/2022

### RECAP OF UNDERLYING POLICY INFORMATION PROVIDED TO US

Your coverage with us has been written based on the following information provided by you either directly or through your authorized representative:

## Information about the Residence

| | |
|---|---|
| Year built | 1960 |
| Square footage | 1319 |
| Type occupancy | Held for Rent |
| Number of families accommodated | 2 |
| Owner or tenant occupied | Home Sharing |
| Type electrical box | Circuit Breaker |
| Most recent plumbing update | 2010 |
| Number of losses in last three years | 0 |
| **(New Home Buyers Only)** | |
| Date of Inspection — N/A for Not Applicable | N/A |

## Roof

| | |
|---|---|
| Date of last update | 2012 |
| Shape | Gable |
| Primary covering used | Composition - 3 Tab Shingle |
| Hail resistance class | Not Rated |

## Heating

| | |
|---|---|
| Primary Type | Electric |
| Other Secondary Type(s)/Appliances Used | N/A |

## Pets

| | |
|---|---|
| Pets | No |
| Number of dogs | N/A |
| Breed(s) includes one of the following — pit bulls, Rottweilers, Wolf Hybrids, or a mixed breed that includes one of these. | N/A |
| History of Biting | N/A |
| Exotic | N/A |
| Description | |
| N/A | |

## Further Details

| | Yes | No | N/A |
|---|---|---|---|
| Purchased within the last six months | | X | |
| Primarily used for residential purposes | X | | |
| Seasonal/secondary dwelling | | X | |
| Dwelling will not be unoccupied for more than 30 days | | X | |
| Mobile home, trailer home, or house trailer | | X | |
| Underground oil tanks on property | | X | |
| Swimming pool | | X | |
| Swimming pool within area enclosed by a fence | | | X |
| Diving board for swimming pool | | | X |
| Trampoline | | X | |
| Trampoline in enclosed area | | | X |
| Use of drones | | X | |
| Any residents with a history of smoking | | X | |
| Used as a farm | | X | |
| Structure is a rowhouse/townhouse | | X | |
| Features log home constructions | | X | |

**HO DEC NY 04 22** | **Page 8 of 9**

Case 7:24-cv-07153-NSR-JCM   Document 1-1   Filed 09/20/24   Page 31 of 97

HOMEOWNERS POLICY
DECLARATIONS

Issued: 06/14/2022

**Policy No.:**  RYHO382994                                      **Effective Date:**  08/03/2022

## Policy Payment Terms

Payment Option: Direct Bill

Payment is due in our office on the
dates shown below.

Installment Plan
(prepared 06-14-2022)

Down Payment received - $0.00

| Installment* | Due Date |
|---|---|
| $407.60 | 08/02/2022 |
| $148.22 | 09/03/2022 |
| $148.22 | 10/06/2022 |
| $148.22 | 11/03/2022 |
| $148.22 | 12/04/2022 |
| $148.22 | 01/04/2023 |
| $148.22 | 02/03/2023 |
| $148.22 | 03/08/2023 |
| $148.22 | 04/05/2023 |
| $148.22 | 05/04/2023 |
| $148.22 | 06/03/2023 |
| $148.20 | 07/05/2023 |

*Includes surcharges and state fees, if any.
Policies that are direct billed will be charged a fee of up
to 0 per installment. There is no installment fee for
policies set up with Direct Draft.

Any checks returned or attempted bank drafts declined
for insufficient funds or a closed account may be
assessed a fee of up to 0.

A late fee may be assessed of up to 0 for payments
received after the due date.

A convenience fee of up to 0 will be added to credit
card payments.

**HO DEC NY 04 22**                                                    **Page 9 of 9**

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

  **b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    **(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.; or**

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Locations**

   a. **Other Residences**

      Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in; or

      (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   b. **Self-storage Facilities**

      Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in; or

      (2) Usually located in an "insured's" residence, other than the "residence premises".

**3. Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

   **a.** We will pay your reasonable expense for the removal of:

   **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

   **b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   **(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   **(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

   provided the trees:

   **(3)** Damage a covered structure; or

   **(4)** Do not damage a covered structure, but:

   **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

## 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I – Conditions**.

## 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

## 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

## 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

## 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C**;

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:

   **a.** Excluded under Section I – Exclusions;

   **b.** Involving collapse, including any of the following conditions of property or any part of the property:

   **(1)** An abrupt falling down or caving in;

   **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

   except as provided in **E.8.** Collapse under Section I – Property Coverages; or

   **c.** Caused by:

   **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

   **(a)** Maintain heat in the building; or

   **(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

      (4) That occurs off the "residence premises" of:

         (a) Trailers, semitrailers and campers;

         (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

         (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

       (1) To the system or appliance from which the water or steam escaped;

       (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14. Freezing**;

       (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

       (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

    c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

    d. Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

    This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

     **(1)** Maintain heat in the building; or

     **(2)** Shut off the water supply and drain all systems and appliances of water.

     However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

  **1. Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

   **b.** The requirements of which result in a loss in value to property; or

   **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

  **2. Earth Movement**

   Earth Movement means:

   **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   **b.** Landslide, mudslide or mudflow;

   **c.** Subsidence or sinkhole; or

   **d.** Any other earth movement including earth sinking, rising or shifting.

   This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.**, is caused by an act of nature or is otherwise caused.

   However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.**, is covered.

  **3. Water**

   This means:

   **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   **b.** Water which:

     **(1)** Backs up through sewers or drains; or

     **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   **d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N. Nuclear Hazard Clause** under Section **I – Conditions.**

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I – Property Coverages**;

4. Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   **a.** Show the damaged property;

   **b.** Provide us with records and documents we request and permit us to make copies; and

   **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I – Property Coverages**, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I – Property Coverages**. Covered property losses are settled as follows:

1. Property of the following types:

   **a.** Personal property;

   **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   **c.** Structures that are not buildings; and

   **d.** Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

      **(1)** The limit of liability under this policy that applies to the building;

      **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      **(3)** The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 47 of 97

### H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

### I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;
2. There is an entry of a final judgment; or
3. There is a filing of an appraisal award with us.

### K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### L. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### M. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### N. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### O. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### P. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

### Q. Policy Period

This policy applies only to loss which occurs during the policy period.

### R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

### S. Loss Payable Clause

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service a residence;

c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

d. Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place:

(a) On an "insured location" as defined in Definition **B.6.a.**, **b.**, **d.**, **e.** or **h.**; or

(b) Off an "insured location" and the "motor vehicle" is:

(i) Designed as a toy vehicle for use by children under seven years of age;

(ii) Powered by one or more batteries; and

(iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

a. Is stored;

b. Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

c. Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

    **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

    **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

    This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This Exclusion e.(3) does not apply to a "motor vehicle" that:

      (a) Is designed for recreational use off public roads;

      (b) Is not owned by an "insured"; and

      (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   **c.** With the conduct of suits and attend hearings and trials; and

   **d.** To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

   **b.** Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section **II**.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or
2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (2) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section II – Additional Coverages.

### G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

HOMEOWNERS
HO 131 01 03 20

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – NEW YORK

## DEFINITIONS

The following definitions are added to Paragraph **B.**:

**12.** "Exterior surfacing" means the material(s) used to surface the exterior of a building to protect against exposure to the elements. "Exterior surfacing" includes, but is not limited to:

  **a.** "Roof surfacing";

  **b.** Siding;

  **c.** Doors; and

  **d.** Windows.

**13.** "Roof surfacing" means the:

  **a.** Shingles or tiles;

  **b.** Cladding;

  **c.** Metal or synthetic sheeting used or similar materials covering the roof; and

  **d.** Roof flashing. This includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection.

## SECTION I – PROPERTY COVERAGES

### E. Additional Coverages

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

Paragraph **6.a.** is replaced by the following:

  **a.** We will pay up to $1,000 for:

    **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

(This is Paragraph **D.6.** in Form **HO 00 06.**)

## SECTION I – PERILS INSURED AGAINST

### Forms HO 00 02, HO 00 04 And HO 00 08

Paragraph **8.** is replaced by the following:

**8. Vandalism Or Malicious Mischief**

This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

### Form HO 00 02 Only

Paragraph **12.b.** is replaced by the following:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

  **b.** This peril does not include loss:

    **(1)** On the "residence premises", if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

    **(2)** To the system or appliance from which the water or steam escaped;

    **(3)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing; or

    **(4)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises".

### Form HO 00 04 Only

Paragraph **12.b.** is replaced by the following:

**12.Accidental Discharge Or Overflow Of Water Or Steam**

  **b.** This peril does not include loss:

    **(1)** To the system or appliance from which the water or steam escaped;

    **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing; or

HO 131 01 03 20          Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.          Page 1 of 9

55 of 96

**HOMEOWNERS -- SPECIAL PROVISIONS -- NEW YORK**

(3) On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

**Form HO 00 06 Only**

Paragraph **8.** is replaced by the following:

**8. Vandalism Or Malicious Mischief**

This peril does not include loss to property which pertains to the "residence premises" if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss. A building being constructed is not considered vacant.

Paragraph **12.b.** is replaced by the following:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**b.** This peril does not include loss:

(1) To or within the "residence premises", if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss. A building being constructed is not considered vacant;

(2) To the system or appliance from which the water or steam escaped;

(3) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing; or

(4) To or within the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

**Form HO 00 03 Only**

**A. Coverage A -- Dwelling And Coverage B -- Other Structures**

Paragraph **A.2.c.** is replaced by the following:

**2.** We do not insure, however, for loss:

**c.** Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, mold, wet or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants, unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage **C** of this Policy;

**Page 2 of 9**          Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.          **HO 131 01 03 20**

56 of 96

**HOMEOWNERS – SPECIAL PROVISIONS – NEW YORK**

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To Paragraph c.(5)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(a)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(b)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under Paragraph **c.(5)** above.

Under Paragraphs **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this Policy is covered.

**B. Coverage C – Personal Property**

Paragraph **12.b.** is replaced by the following:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing; or

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises".

**Form HO 00 05 Only**

Paragraph **A.** is replaced by the following:

**A.** Under Coverages **A**, **B** and **C**:

**1.** Excluded under Section I – Exclusions;

**2.** Caused by:

**a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(1)** Fence, pavement, patio or swimming pool;

**(2)** Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

**(3)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**HO 131 01 03 20**    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 3 of 9**

57 of 96

**HOMEOWNERS – SPECIAL PROVISIONS – NEW YORK**

(4) Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against in Paragraphs **a.** through **o.** as listed in Paragraph **E.10.** Landlord's Furnishings under Section I – Property Coverages;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(7) Birds, rodents or insects;

(8) Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

(9) Animals owned or kept by an "insured".

**Exception To Paragraph 2.d.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A, B** or **C** resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under Paragraph **2.d.** above.

Under Paragraphs **2.a.** through **d.** above, any ensuing loss to property described in Coverages **A, B** and **C** not precluded by any other provision in this Policy is covered.

Paragraph **B.1.** is replaced by the following:

**1.** Caused by vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**SECTION I – EXCLUSIONS**

Paragraph **8. Intentional Loss** is replaced by the following:

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

This exclusion only applies to an "insured" who commits or conspires to commit an act with the intent to cause a loss.

(This is Paragraph **A.8.** in Forms **HO 00 03** and **HO 00 05.**)

**SECTION I – CONDITIONS**

Paragraph **C. Duties After Loss** Paragraph **1.** Give prompt notice to us or our agent is replaced by the following:

**Page 4 of 9**     Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.     **HO 131 01 03 20**

58 of 96

**HOMEOWNERS – SPECIAL PROVISIONS – NEW YORK**

1. Give prompt notice to us or our agent. If loss is caused by or results from the peril of hail, loss must be reported to us or our agent within 90 days of the loss event.

The following is added to **SECTION I – CONDITIONS – D.2. Loss Settlement:**

1. The amount we will pay to settle a loss does not include replacement or the cost to replace undamaged "exterior surfacing" due to any mismatch between existing undamaged "exterior surfacing" on a building and new materials used to repair or replace damaged "exterior surfacing". Materials used to make the repair may be of similar quality, kind, texture and color such that there is a reasonable match with any existing materials. (This is not applicable on a Form **HO 00 04.**)

2. The amount we will pay to settle a loss does not include payment for stigma damage or any reduction or diminution in value of such property, whether actual or perceived.

Paragraph **F. Appraisal** is replaced by the following:

**F. Appraisal**

If you and we fail to agree on the actual cash value, the replacement cost, the extent of the loss or damage or the amount of the loss or damage, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the actual cash value, replacement cost, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

Paragraph **H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy and the action is started within two years after the inception of the loss. For purposes of this condition, inception of the loss means the date on which the direct physical loss or damage occurred.

The following is added to Paragraph **J. Loss Payment** and applies only to policies covering three- or four-family dwellings:

Prior to the payment of any proceeds to you for a premises loss caused by fire, we will deduct and pay the claim of any tax district which renders a certificate of lien to us as required by New York Insurance Law. We will not be obligated to pay you the amount we are required to pay on the lien. If we make payment of this lien within 30 days after receiving the certificate of lien, the claim will be considered valid and properly paid. We will deduct the amount paid from our final settlement with you.

**R. Concealment Or Fraud**

This paragraph is deleted.

(This is Paragraph **Q.** in Form **HO 00 04.**)

The following condition is added:

**T. Estimation Of Claims**

Upon request, we will furnish you, or your representative, with a written estimate of damages to real property, specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within 30 days after your request or its preparation, whichever is later.

(This is Paragraph **S.** in Form **HO 00 04.**)

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

Paragraph **2.** is replaced by the following:

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**SECTION II – EXCLUSIONS**

**A. "Motor Vehicle Liability"** in **SECTION II – EXCLUSIONS:**

Paragraph **1.** is replaced by the following:

HO 131 01 03 20        Includes copyrighted material of the Insurance Services Office, Inc., used        Page 5 of 9
with its permission.

59 of 96

**HOMEOWNERS -- SPECIAL PROVISIONS -- NEW YORK**

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle" has fewer than four wheels or the involved "Motor Vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**E. Coverage E -- Personal Liability And Coverage F -- Medical Payments To Others**

Paragraph **1. Expected Or Intended Injury** is replaced by the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured";

The following exclusion is added to **SECTION II - EXCLUSIONS**: Paragraph **E. Coverage E -- Personal Liability And Coverage F -- Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

i. **Pollutants**

   Any liability arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants. This includes any request or order to test for, monitor, or for remediation of any pollutants. This exclusion includes any liability imposed by law;

ii. **Environmental Exposures**

   Any liability, including liability imposed by law or any request or order to test for, monitor, or to remediate any environmental exposures caused by exposure to dangerous substances, which includes, but are not limited to:

   a. paint, plaster, pipes, or putty that has lead or lead compounds in it;

   b. soil or earth containing lead or any other lead containing substances;

   c. exposure to radon or any other substance that emits radiation;

   d. asbestos or any asbestos related material.

   Items **a.** and **b.** above only apply to:

   a) a covered premises constructed prior to 1980 which no lead abatement took place. In case of a claim, proof of complete lead abatement will be required.

   b) An area of the home that is owner occupied and any commercial activity takes place there, e.g. a dwelling held for rent, a daycare, or any other business

   c) Any premises or part of a premises that is not owner occupied.

iii. **Liquid Fuel**

   Any liability arising out of, resulting from, or caused by the escape or release of liquid fuel from a liquid fuel tank. This includes any request or order to test for, monitor, or remediate any liquid fuel escape or release.

iv. **Animals**

   Any liability caused by any animal if, at the time and place of an "occurrence", the involved animal:

   a. Is a pure breed or mixed breed of a:

      (1) Wolf/Wolf hybrids;

      (2) Pit bull (including but not limited to American Staffordshire Terriers, American Pit Bull Terriers, American Bulldog or Staffordshire Bull Terriers); or

      (3) Rottweilers;

   b. Is any exotic, farm or saddle animal, including but not limited to hoofed animals, livestock, reptiles, primates and fowl;

   c. Is any animal for which has a prior history of attacking or biting; or

   d. Is any animal that has been trained to attack persons, property or other animals; or animals that are trained to guard persons or property; or animals that are trained to fight; or

   e. Is any animal that is not owned by an "insured";

**Page 6 of 9**          Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.          **HO 131 01 03 20**

60 of 96

**HOMEOWNERS -- SPECIAL PROVISIONS -- NEW YORK**

This exclusion includes but is not limited to animals owned or kept, including temporary supervision, by your or any insured, resident, tenant or guest whether or not the injury occurs on the "residence premises" or elsewhere.

This animal exclusion does not apply to guide dogs, hearing dogs and other dogs trained to assist the physically challenged.

**SECTION II -- CONDITIONS**

**C. Duties After "Occurrence"**

The first paragraph and Paragraph **1.** are replaced by the following:

In case of an "occurrence", you or another "insured" or someone acting for the "insured" will perform the following duties that apply. We have no duty to provide coverage under this Policy if your failure to comply with the following duties is prejudicial to us, except as provided for in Paragraph **1.** You will help us by seeing that these duties are performed. Any written notice given by any claimant to us or any of our agents in this state, containing particulars sufficient to identify the "insured", will be deemed notice to us.

**1.** Give written notice to us or any of our agents in this state as soon as reasonably possible, which sets forth:

**a.** The identity of the Policy and the named "insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses.

Failure to give notice to us as required under this Policy shall not invalidate any claim made by the "insured", injured person or any other claimant, unless the failure to provide such timely notice is prejudicial to us. However, no claim made by the "insured", injured person or any other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as reasonably possible thereafter.

**D. Duties Of An Injured Person -- Coverage F -- Medical Payments To Others**

Paragraph **1.a.** is replaced by the following:

**a.** Give us or any of our agents in this state written proof of claim, under oath if required, as soon as reasonably possible; and

**F. Suit Against Us**

The following provisions are added:

**4.** If we deny coverage or do not admit liability for damages arising from "bodily injury" caused by an "occurrence" because an "insured" or the injured person, someone acting for the injured person or other claimant fails to give us or any of our agents in this state notice as soon as reasonably possible, then the injured person, someone acting for the injured person or other claimant may bring an action against us, in which the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide notice as soon as reasonably possible.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if, within 60 days after we deny coverage or do not admit liability for damages because of "bodily injury", we or an "insured":

**a.** Brings an action to declare the rights of the parties under the Policy; and

**b.** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**5.** If we fail to pay for damages because of "bodily injury" or "property damage" caused by an "occurrence" within 30 days after serving of notice of entry of judgment upon the "insured" and us, then an action may be maintained against us for the amount of the judgment, up to the Limit of Liability.

However, this does not apply during a stay or limited stay of execution against the "insured" on such judgment.

**J. Concealment Or Fraud**

This paragraph is deleted.

The following is added to **SECTION II- Conditions**

**i. Animal Liability**

The maximum amount we will pay for any covered liability caused by animals is subject to an aggregate limit of $100,000. This aggregate limit is the maximum we will pay for all covered losses during the policy period including but not limited to damages, defense cost, prejudgment interest and loss expenses.

**SECTIONS I AND II -- CONDITIONS**

**C. Cancellation**

Paragraph **2.** is replaced by the following:

HO 131 01 03 20     Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.     Page 7 of 9

61 of 96

**HOMEOWNERS – SPECIAL PROVISIONS – NEW YORK**

2. We may cancel the entire policy only for the reasons stated in this condition. The cancellation notice will be mailed to you at the address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel the entire policy at any time by mailing to you at least 15 days' notice of cancellation.

   b. When this Policy has been in effect for less than 60 days and is not a renewal with us, we may cancel the entire policy for any reason by letting you know at least 30 days before the date cancellation takes place.

   c. When this Policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel the entire policy only for one or more of the following reasons by notifying the "insured" at least 30 days prior to the proposed cancellation date:

      (1) Conviction of a crime arising out of acts increasing the hazard insured against;

      (2) Discovery of fraud or material misrepresentation in obtaining the Policy or in the presentation of a claim thereunder;

      (3) Discovery of willful or reckless acts or omissions increasing the hazard insured against;

      (4) Physical changes in the property insured occurring after issuance or last annual anniversary date of the Policy which result in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last voluntarily renewed; or

      (5) A determination by the Superintendent of Financial Services that the continuation of the Policy would violate or would place us in violation of the New York Insurance Law.

      If one of the reasons listed in this Paragraph c. exists, we may cancel the entire policy.

   d. When the property covered by this Policy is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

      If you fail to return the completed, signed and affirmed Anti-arson Application to us:

      (1) Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

      (2) Before the annual renewal date of any policy, we will cancel the Policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

   e. If we have the right to cancel, we may, instead of cancelling this Policy, amend the limits of liability or reduce coverage not required by law. If we take this action, we will notify you by mail at least 20 days prior to the date of such change.

   Delivery of such written notice by us to the "insured" at the mailing address shown in the Declarations or at a forwarding address will be equivalent to mailing.

Paragraph 3. is replaced by the following:

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata if canceled by us, or after the first year this policy has been in effect. Prior to that, we will cancel the policy "Short Rate" based on a table filed with the State of New York Department of Financial Services.

   When the premium is advanced under a premium finance agreement, we may retain a minimum earned premium on the Policy of 10% of the total policy premium or $60, whichever is greater.

Paragraph **D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

1. We will not refuse to renew or condition our renewal of this Policy except as allowed by the laws of the state of New York. The conditions may include, but are not limited to, amending the limits of liability or reducing coverage not required by law. If we take this action, we will notify you by mail at least 45 days, but not more than 60 days, prior to the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

   Delivery of such written notice by us to the "insured" at the mailing address shown in the Declarations or at a forwarding address will be equivalent to mailing.

**Page 8 of 9**
Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.
**HO 131 01 03 20**

62 of 96

**HOMEOWNERS -- SPECIAL PROVISIONS -- NEW YORK**

   **2.** We will not refuse to renew this Policy because of underwriting reasons relating to the Home Business Insurance Coverage endorsement if it is attached to the Policy. We may, however, renew this Policy without the Home Business Insurance Coverage endorsement.

The following paragraph is added:

**H. Concealment Or Fraud**

   We do not provide coverage for the "insured" who, whether before or after a loss, has:

   **1.** Intentionally concealed or misrepresented any material fact or circumstance; or

   **2.** Engaged in fraudulent conduct;

   relating to this insurance.

If Farmers Personal Liability Endorsement **HO 24 73** is made part of this Policy, the following applies:

**SECTION II -- LIABILITY COVERAGES**

**A. Coverage E -- Personal Liability**

   Paragraph **2.** is replaced by the following:

   **2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**SECTION II -- EXCLUSIONS**

**E. Coverage E -- Personal Liability And Coverage F -- Medical Payments To Others**

   Paragraph **1. Expected Or Intended Injury** is replaced by the following:

   **1. Expected Or Intended Injury**

     "Bodily injury" or "property damage" which is expected or intended by one or more "insureds";

   Paragraph **6. Pollution** is replaced by the following:

   **6. Pollution**

     "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release or escape of pollutants into or upon land, the atmosphere or any watercourse or body of water.

     This exclusion does not apply if the discharge, dispersal, seepage, migration, release or escape is sudden and accidental.

**All other provisions of this Policy apply.**

HO 131 01 03 20    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 9 of 9**

63 of 96

FILED: SULLIVAN COUNTY CLERK 07/31/2024 02:40 PM INDEX NO. E2024-1238
NYSCEF DOC. NO: 1 RECEIVED NYSCEF: 07/31/2024

POLICY NUMBER:

**HOMEOWNERS
HO 04 46 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INFLATION GUARD

**SCHEDULE\***

| |
|---|
| Percentage Amount:  4% |
| |

**\*Entry may be left blank if shown elsewhere in this policy for this coverage.**

The limits of liability for Coverages **A, B, C** and **D** will be increased annually by the percentage amount that is:

**1.** Shown in the Schedule above; and

**2.** Applied pro rata during the policy period.

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 53 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE

### INCREASED LIMIT

**SCHEDULE\***

---

**SECTION I – PROPERTY COVERAGES**

    **ADDITIONAL COVERAGES**

    **6.  Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**
        The limit of liability for this coverage is increased as noted below.

        **Increase In Limit Of Liability**        **Total Limit Of Liability**

<br/><br/><br/><br/><br/><br/><br/><br/>

All other provisions of this policy apply.

---

**\*Entries may be left blank if shown elsewhere in this policy for this coverage.**

---

POLICY NUMBER:

**HOMEOWNERS**
**HO 06 49 10 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BROADENED RESIDENCE PREMISES
# DEFINITION ENDORSEMENT

**SCHEDULE**

| Inception Date | Termination Date |
|---|---|
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**DEFINITIONS**

Definition **B.11.** is replaced by the following:

11.  "Residence premises" means:

**a.** With respect to the period shown in the above Schedule:

**(1)** The one-family dwelling;

**(2)** The two-, three- or four-family dwelling; or

**(3)** That part of any other building;

which is shown as the "residence premises" in the Declarations; and

**b.** With respect to any portion of the policy period not shown in the above Schedule:

**(1)** The one-family dwelling;

**(2)** The two-, three- or four-family dwelling; or

**(3)** That part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

All other provisions of this Policy apply.

HOMEOWNERS
HO 06 53 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HOME-SHARING HOST ACTIVITIES
# AMENDATORY ENDORSEMENT

**DEFINITIONS**

**A.** The following definitions are added:

1. "Home-sharing host activities" means:

   a. The:

      (1) Rental or holding for rental; or

      (2) Mutual exchange of services;

      of the "residence premises", in whole or in part, by an "insured" to a "home-sharing occupant" through the use of a "home-sharing network platform"; and

   b. Any other related property or services made available by an "insured" for use during such:

      (1) Rental; or

      (2) Mutual exchange of services;

      except those property or services provided by another party.

2. "Home-sharing network platform" means an online-enabled application, web site or digital network that:

   a. Is used for the purpose of facilitating, for money, mutual exchange of services or other compensation, the rental of a dwelling or other structure, in whole or in part; and

   b. Allows for the agreement and compensation with respect to such rental to be transacted through such online-enabled application, web site or digital network.

3. "Home-sharing occupant" means a person, other than an "insured", who:

   a. Has entered into an agreement or arranged compensation with an "insured" through the use of a "home-sharing network platform" for "home-sharing host activities"; or

   b. Is accompanying or staying with a person described in Paragraph **3.a.** of this provision under such "home-sharing host activities".

**B.** Definition **B.3.** "Business" is replaced by the following:

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis;

   b. "Home-sharing host activities"; or

   c. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

**C.** In this Policy, the terms:

1. Roomer;

2. Boarder;

3. Tenant; or

4. Guest;

do not include a "home-sharing occupant".

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

Paragraphs **f.** and **g.** of **4. Property Not Covered** are replaced by the following:

   We do not cover:

   f. Property of:

      (1) A "home-sharing occupant";

    (2) Any other person occupying the "residence premises" as a result of any "home-sharing host activities"; and

    (3) Roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in:

    (1) A space while rented or primarily held for rental to a "home-sharing occupant"; or

    (2) Subject to Paragraph **C.4.g.(1)**, property in an apartment regularly rented or held for rental to others by an "insured" except as provided in **E.10.** Landlord's Furnishings under Section **I – Property Coverages**;

The following provision is added to **4. Property Not Covered:**

    We do not cover property used primarily for "home-sharing host activities".

**D. Coverage D – Loss Of Use**

Paragraph **D.2. Fair Rental Value** is replaced by the following:

**2. Fair Rental Value**

    If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

    However, we do not cover any fair rental value arising out of or in connection with "home-sharing host activities".

    Payment will be for the shortest time required to repair or replace such premises.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

Paragraph **A.2.c.(3)** is replaced by the following:

    (3) Theft:

      (a) If such loss arises out of or results from "home-sharing host activities"; or

      (b) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

Paragraph **A.2.c.(4)** is replaced by the following:

    (4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if:

      (a) The loss arises out of or results from "home-sharing host activities"; or

      (b) The dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**B. Coverage C – Personal Property**

Paragraph **B.8.** is replaced by the following:

**8. Vandalism Or Malicious Mischief**

    This peril does not include loss caused by vandalism or malicious mischief to property arising out of or resulting from "home-sharing host activities".

Paragraph **B.9.** is replaced by the following:

**9. Theft**

    **a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    **b.** This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured";

      (4) That occurs off the "residence premises" of:

        (a) Trailers, semitrailers and campers;

        (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

        (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss; or

(5) If such loss arises out of or results from "home-sharing host activities".

## SECTION II – EXCLUSIONS

Exclusion **E.2.** is replaced by the following:

Coverages **E** and **F** do not apply to the following:

**2. "Business"**

    **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    **b.** With respect to other than "home-sharing host activities", this Exclusion **E.2.** does not apply to:

      **(1)** The rental or holding for rental of an "insured location":

        **(a)** On an occasional basis if used only as a residence;

        **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        **(c)** In part, as an office, school, studio or private garage; and

      **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

Exclusion **G.4.** is replaced by the following:

Coverage **F** does not apply to "bodily injury":

**4.** To:

    **a.** A "home-sharing occupant"; or

    **b.** Any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

The following provision is added:

**Personal Injury Coverage**

If the Personal Injury Coverage endorsement is made a part of this Policy, Exclusion **1.g.** is replaced by the following:

This insurance does not apply to:

**1.** "Personal injury":

    **g.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    With respect to other than "home-sharing host activities", this exclusion does not apply to:

      **(1)** The rental or holding for rental of an "insured location":

        **(a)** On an occasional basis if used only as a residence;

        **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        **(c)** In part, as an office, school, studio or private garage; and

      **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

All other provisions of this Policy apply.

HOMEOWNERS
HO 131 92 08 19

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DWELLING RENTAL COVERAGE ENDORSEMENT

### SCHEDULE

| Dwelling Rental Activities Damage to Property of Others | |
|---|---|
| Limit Of Liability:    $ | Per Occurrence |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

## DEFINITIONS

**A.** The following definitions are added:

**1.** "Dwelling rental activities" means:

**a.** The rental or holding for rental of the "residence premises", in whole or in part, by an "insured" or

**b.** Any other related property or services made available by an "insured" for use during such "dwelling rental activities", except property or services provided by another party.

**2.** "Home-sharing network platform" means an online-enabled application, web site or digital network that:

**a.** Is used for the purpose of facilitating, for money, mutual exchange of services or other compensation, "dwelling rental activities"; and

**b.** Allows for the agreement and compensation with respect to such "dwelling rental activities" to be transacted through such online-enabled application, web site or digital network.

**3.** "Home-sharing occupant" means a person, other than an "insured", who:

**a.** Occupies the "residence premises" in whole or in part, pursuant to an agreement with an "insured" for "dwelling rental activities," from a "home-sharing network platform", but only for the period of time of the occupation, or;

**b.** Is accompanying or staying with a person described in Paragraph **3.a.** under such "dwelling rental activities".

**4.** "Tenant" means:

An individual, other than an "insured" or a "home-sharing occupant", along with their spouse and any family member of the individual under the age of 21 who is related to the individual that occupies the "residence premises", in whole or in part, pursuant to an agreement with an "insured".

**B.** Definition **B.3.** "Business" is replaced by the following:

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis;

**b.** "Dwelling rental activities"; or

**c.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

---

HO 131 92 08 19    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 1 of 6**

**HOMEOWNERS – Dwelling Rental Coverage Endorsement**

**C.** Definition **B.11.** "Residence premises" is replaced by the following:

**11.** "Residence premises" means:

The one-, two-, three- or four-family dwelling or that part of any other building owned by you that is occupied by you or is rented or held for rental for residential purposes to others and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds owned by you at that location.

**D.** In this Policy, the terms:

**1.** Roomer;

**2.** Boarder;

**3.** Tenant; or

**4.** Guest

do not include a "home-sharing occupant".

**SECTION I – PROPERTY COVERAGES**

**B. Coverage B – Other Structures**

Paragraphs **B.2.b.** is hereby deleted.

**Paragraph B.2.c.** is replaced by the following:

**2.** We do not cover:

**c.** Other structures from which any "business", other than "dwelling rental activities" or "home sharing host activities", is conducted; or

**C. Coverage C – Personal Property**

Paragraph **1.** and **2.** are replaced with:

**1. Covered Property at Residence Premises**

We cover personal property owned by an "insured" while it is in the "Residence Premises".

**2. Property At Other Locations**

Our limit of liability for personal property temporarily moved from the "residence premises" to another residence of the insured or a self storage facility is 10% of the limit of liability for Coverage **C** or $1000, whichever is greater.

Paragraph **f.** of **4. Property Not Covered** is replaced by the following:

We do not cover:

**f.** Property of:

**(1)** A "home-sharing occupant";

**(2)** Any other person occupying the "residence premises" as a result of any "dwelling rental activities"; and

**(3)** Roomers, boarders and other tenants;

Paragraph **g.** of **4. Property Not Covered** is replaced by the following:

We do not cover:

**g.** Property in any residence other than the "residence premises" that is regularly rented or held for rental to others by an "insured".

**D. Coverage D – Loss of Use**

Paragraph **D.2. Fair Rental Value** is replaced by the following:

**2. Lost Rental Value Of "Dwelling Rental Activities"**

If an "insured" has entered into a contract or agreement with another person for "dwelling rental activities" for a specified period of time, and either:

**a.** A loss covered under Section I makes that part of the "residence premises" used for such "dwelling rental activities" not fit to live in during the period of time specified in such contract or agreement; or

**b.** The "insured" or such other person cancels such contract or agreement, provided such cancellation takes place:

**(1)** During the period of time a National Weather Service hurricane watch or hurricane warning is in effect for any part of the state in which the:

**(a)** "Residence premises" is located; or

**(b)** Person entering into such contract or agreement with the "insured" resides; or

**(2)** Within 24 hours of the termination of such hurricane watch or hurricane warning described in Paragraph **b.(1)** of this provision;

we cover the lost rental value of the "dwelling rental activities" specified under such contract or agreement, less any expenses that do not continue while it is not fit to live in, provided such contract was entered into prior to the date of the loss.

Payment will be for the shortest period of time agreed upon for "dwelling rental activities" under such contract or agreement.

---

**HO 131 92 08 19**    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 2 of 6**

**HOMEOWNERS – Dwelling Rental Coverage Endorsement**

**E. Additional Coverages**

Paragraph **E.10. Landlord's Furnishings** is deleted:

**SECTION I – PERILS INSURED AGAINST**

Paragraph **A.2.c.(1)** under **Coverage A – Dwelling And Coverage B – Other Structures** is replaced by the following:

**2.** We do not insure, however for loss:

**c.** Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

This provision does not apply if the "residence premises" has not been vacant for 60 consecutive days or more prior to the date of loss and you:

(a) maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water, unless the building is protected by an automatic fire protective sprinkler system, in which case you must continue the water supply to that system and maintain heat in the building.

For purposes of this provision, vacant means not occupied by the insured or tenant or a "home sharing occupant", even if held for rental

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

Paragraph **A.2.c.(4)** under **Coverage A – Dwelling and Coverage B – Other Structures** is replaced by the following:

**2.** We do not insure, however, for loss:

**c.** Caused by:

(4) Theft, vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief or theft, if the dwelling where the theft, vandalism of malicious mischief occurred has been vacant for more than 60 consecutive days immediately before the loss. For purposes of this provision, vacant means not occupied by the insured, or "tenant" or a "home sharing occupant", even if held for rental;

Paragraph **B. Coverage C – Personal Property**, Subparagraph **9. Theft** is replaced by the following:

**9. Theft**

**a.** This peril includes attempted theft and loss of property from the "residence premises" when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

(1) Committed by any "insured"; or

(2) Committed by a "home-sharing occupant" or roomer, boarder, tenant or guest; or

(3) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

(4) That occurs off the "residence premises"; or

(5) That occurs when the "residence premises" has been vacant for more than 60 consecutive days immediately before the loss. For purposes of this provision, vacant means not occupied by the insured, or "tenant" or a "home sharing occupant", even if held for rental.

We will not pay, under this Subparagraph **9. Theft** for loss by theft from property rented or held for rental of any of the following:

(i) Money, bank notes, bullion, gold, goldware, gold-plated ware, silver, silverware, silver-plated ware, pewterware, platinum, platinumware, platinum-plated ware, coins, medals, scrip, stored value cards and smart cards;

(ii) Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps regardless of the medium (such as paper or computer software) on which the material exists; or

(iii) Jewelry, watches, furs, antiquities, collectible items, precious and semiprecious stones; or

HO 131 92 08 19    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 3 of 6**

72 of 96

**HOMEOWNERS – Dwelling Rental Coverage Endorsement**

**(iv)** Portable electronics including but not limited to cameras, audio equipment, video equipment and televisions; or

**(v)** Firearms and any related equipment and accessories.

**(vi)** Trailers, semi-trailers and campers

**(vii)** Watercraft of all types and their furnishings, equipment and outboard engines or motors.

**SECTION I – CONDITIONS**

With respect to the coverage provided by this endorsement, Paragraph **G. Other Insurance And Service Agreement** is replaced by the following:

**G. Other Insurance And Service Agreement**

**1.** If a loss covered by this Policy is also covered by:

   **a.** Other insurance, except insurance provided by a "home-sharing network platform", we will pay only the excess over any amounts due under such other insurance.

   **b.** A service agreement, protection plan or guarantee, except a service agreement, protection plan or guarantee provided by a "home-sharing network platform", this insurance is excess over any amounts payable under any such agreement.

**2.** Subject to Paragraph **G.1.**, if, at the time of loss, there is:

   **a.** Other insurance;

   **b.** A service agreement;

   **c.** A protection plan; or

   **d.** A guarantee;

   provided by, on behalf of, or through a "home-sharing network platform" covering the same property covered by this Policy, this insurance is excess over the amount due under such other insurance, service agreement, protection plan or guarantee.

**3.** As used in this Paragraph **G.**:

   **a.** A service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

   **b.** A protection plan or guarantee means a product provided by a "home-sharing network platform" which provides property damage protection for "dwelling rental activities", even if it is characterized as insurance.

**SECTION II – LIABILITY COVERAGES**

Paragraph **A. Coverage E – Personal Liability** is replaced by the following:

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages due to "bodily injury" or "property damage" caused by an occurrence to which this coverage applies and such property damage or bodily injury occurs at the "residence premises" and arises out of the ownership, maintenance, or use of the "residence premises" for the purposes of "dwelling rental activities" we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable;

**2.** Provide a defense at our expense, by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

This coverage does not apply to bodily injury or property damage occurring somewhere other than the "residence premises" or which does not arise out of the ownership, maintenance, or use of the "residence premises" for the purposes of dwelling rental activities.

Paragraph **B. Coverage F – Medical Payments to Others** is replaced with the following:

**B. Coverage F – Medical Payments to Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of the accident causing "bodily injury" caused by an "occurrence" to which this coverage applies, provided that such "occurrence" occurs at the "residence premises" and arises out of the ownership, maintenance, or use of the "residence premises" for the purposes of "dwelling rental activities".

Medical expenses mean reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and prosthetic devices. Medical expenses do not include expenses for funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person, "tenant" or "home-sharing occupant" at the "residence premises" with the permission of an "insured"; or

**HO 131 92 08 19**   Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.   **Page 4 of 6**

73 of 96

**HOMEOWNERS -- Dwelling Rental Coverage Endorsement**

2. To a person off the "residence premises", if the "bodily injury" arises out of a condition at the "residence premises" or the ways immediately adjoining.

## SECTION II -- EXCLUSIONS

Exclusion **E.2.** is replaced by the following:

2. **"Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion **E.2.** does not apply to "dwelling rental activities"

Paragraph **E. Coverage E - Personal Liability And Coverage F - Medical Payments to Others,** is amended to include the following provision:

Coverages **E** and **F** do not apply to:

## 9. Violation of Ordinance or Law

"Bodily injury" or "property damage" arising out of a violation of any law or ordinance by an insured, including, but not limited to, any law or ordinance relating to dwelling rental activities or home sharing, violations of applicable building codes, and other violations.

Paragraph **F.  Coverage E -- Personal Liability,** is amended to include the following provision:

**Coverage E** does not apply to:

7. Liability for any violation of law or ordinance by an insured or home sharing occupant.

The following is added to **SECTION II - EXCLUSIONS:**

## A. Animals

Coverages **E** and **F** do not apply to any "bodily injury" or "property damage" caused by any animal owned or not owned by the "insured".

This exclusion does not apply to guide dogs, hearing dogs and other dogs trained to assist the physically challenged.

## SECTION II -- ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **C. Damage to Property of Others** is replaced by the following:

C. **Dwelling Rental Activities Damage to Property of Others**

1. We will pay, at replacement cost, up to:

a. $1,000; or

b. The Dwelling Rental Activities Damage to Property of Others Limit of Liability shown in the Schedule;

whichever is greater, per "occurrence", for "property damage" to property of others:

a. Caused by an "insured"; and

b. Arising out of "dwelling rental activities".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under **SECTION I;**

b. Caused intentionally by an "insured" who is 13 years of age or older

c. To property owned by an "insured";

d. To property owned by or rented to a "home-sharing occupant" or tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business", other than "dwelling rental activities", engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

---

**HO 131 92 08 19**    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 5 of 6**

Case 7:24-cv-07153-NSR-JCM   Document 1-1   Filed 09/20/24   Page 76 of 97

HOMEOWNERS – Dwelling Rental Coverage Endorsement

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Paragraph **H. Other Insurance** is replaced by the following:

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy. This insurance is also excess over other insurance, protection plans or guarantees provided by, on behalf of or through a "home sharing network platform". A protection plan or guarantee means a product provided by, on behalf of, or through a "home-sharing network platform" which provides liability protection for "home-sharing host activities".

## SECTIONS I AND II – CONDITIONS

The following provision is added:

**Dwelling Rental Activities Verification Requirements**

With respect to "dwelling rental activities", we must be provided, as often as we reasonably require, with information we reasonably require to verify the number of:

1. Rental agreements, leases or contracts entered into by an "insured"; and

2. Nights the "residence premises" was occupied, in whole or in part, by "home-sharing occupants".

**All other provisions of this Policy apply.**

**HO 131 92 08 19**     Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.     **Page 6 of 6**

75 of 96

POLICY NUMBER:

HOMEOWNERS
HO 23 85 05 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE – NEW YORK

**SCHEDULE**

| Limited Water Back-up And Sump Discharge Or Overflow Coverage Limit Of Liability:    $ |
| --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section I – Property Coverages**

  **E. Additional Coverages**

  The following coverage is added:

  **Limited Water Back-up And Sump Discharge Or Overflow Coverage**

  We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence of an "insured" other than an insured minor or unemancipated child, to property covered under Section I caused by water, or waterborne material, which:

  **1.** Backs up through sewers or drains; or

  **2.** Overflows or is discharged from a:

    **a.** Sump, sump pump; or

    **b.** Related equipment;

  even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

  This coverage does not increase the limits of liability for Coverage **A, B, C** or **D** stated in the Declarations.

**B. Section I – Perils Insured Against**

With respect to the coverage provided under this endorsement, Paragraphs:

**A.2.c.(5)(b)** in Form **HO 00 03;**

**A.2.d.(2)** in Form **HO 00 05;**

**2.i.(2)** in Endorsement **HO 23 35;**

**3.i.(2)** in Endorsement **HO 23 19;** and

**2.c.(5)(b)** in Endorsement **HO 23 25;**

are replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Section I – Exclusions**

With respect to the coverage provided under this endorsement:

**1.** The **Water** Exclusion is replaced by the following:

  **Water**

  This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

  **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

  **b.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

  **c.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **C.1.a.** and **C.1.b.** of this exclusion.

  This exclusion applies regardless of whether any of the above, in Paragraphs **C.1.a.** through **C.1.c.**, is caused by an act of nature or is otherwise caused.

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 78 of 97

This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in Paragraphs **C.1.a.** through **C.1.c.,** is covered.

**2.** The **Power Failure** Exclusion does not apply.

All other provisions of this Policy apply.

HOMEOWNERS
HO 24 93 05 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WORKERS' COMPENSATION
### CERTAIN RESIDENCE EMPLOYEES – NEW YORK

We agree with respect to covered "residence employees":

## WHO IS COVERED

A covered "residence employee" under this endorsement is a "residence employee" who is engaged in regular employment of less than 40 hours per week or is engaged in casual employment.

However, as stated in New York Insurance Law Section 3420(j)(1), coverage does not apply to an employee who is not required, under New York Workers' Compensation Law, to be covered. Attachment of this endorsement does not constitute a voluntary election of coverage under New York Workers' Compensation Law.

## UNDER COVERAGE I

To pay when due all benefits required of an "insured" by the New York Workers' Compensation Law; and

## UNDER COVERAGE II

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a covered "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

a. In the United States of America, its territories or possessions, or Canada, or

b. Temporarily elsewhere if the covered "residence employee" is a citizen or resident of the United States or Canada.

## APPLICATION OF COVERAGE

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the covered "residence employee's" employment by the "insured".

The covered "residence employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease must occur during the policy period.

## POLICY PROVISIONS

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

a. Under Sections I and II – Conditions:

    B. Waiver Or Change Of Policy Provisions.

    C. Cancellation.

    E. Assignment.

    F. Subrogation.

b. Under Section II – Conditions:

    C. Duties After "Occurrence".

    F. Suit Against Us.

    G. Bankruptcy Of An Insured.

c. Our agreement to defend the "insured" as provided under Coverage E – Personal Liability.

d. Under Section II – Additional Coverages:

    A. Claim Expenses.

e. The definition of "bodily injury", "business", "insured" and "residence employee".

## ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I

The following provisions are applicable to Coverage I:

a. As between the covered "residence employee" and us, notice to or knowledge of the occurrence of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

b. The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

## ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE II

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

 © ISO Properties, Inc., 2001

## LIMITS OF LIABILITY COVERAGE II

We may not limit our liability to pay damages for which we become legally liable to pay because of "bodily injury" to an "insured's" covered "residence employees" if the "bodily injury" arises out of and in the course of employment that is subject to and is compensable under the Workers' Compensation Law of New York.

## OTHER INSURANCE

If a loss covered by this insurance is also covered by other insurance, we will not pay more than our share of benefits and costs. The shares of all applicable insurance will be equal until the loss is paid. However, if a loss covered by this insurance is also covered by insurance written to cover business employees of an "insured" who is a sole proprietor, this insurance is primary.

## CONFORMITY TO STATUTE

If any term of this insurance is in conflict with the New York Workers' Compensation Law, such term is amended by this statement to conform to that law.

## EXCLUSIONS

This policy does not apply:

a. To liability for "bodily injury" arising out of "business" pursuits of an "insured".

b. Under Coverage II:

   1. To liability assumed by the "insured" under any contract or agreement.

   2. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

   3. To punitive or exemplary damage because of "bodily injury" to a covered "residence employee" employed in violation of law.

   4. To "bodily injury" to a covered "residence employee" employed in violation of law with the knowledge of an "insured".

   5. To "bodily injury" intentionally caused or aggravated by an "insured".

   6. To damages arising out of the unlawful discharge or coercion of, or unlawful discrimination against, a covered "residence employee".

HOMEOWNERS
HO 34 02 02 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT

**DEFINITIONS**

Definition **B.1.** is replaced by the following:

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight including but not limited to unmanned aircraft, whether or not model or hobby;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

All other provisions of this Policy apply.

---

HO 34 02 02 17                    © Insurance Services Office, Inc., 2016                    Page 1 of 1

**HOMEOWNERS**
**HO 99 83 08 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE DEVICES

**A. DEFINITIONS**

    **1.** The following definition is added:

        "Protective Devices" are devices listed on your declaration pages that include fire alarms, burglar alarms, sprinkler systems and water sensors.

    **2.** It is a condition of coverage under **SECTION I - PROPERTY COVERAGES** of your policy that you:

        **a.** Maintain all Protective Devices in complete working order and,

        **b.** If the Protective Devices listed in your declarations include a Central Station Reporting Fire Alarm or a Central Station Reporting Burglar Alarm, that you maintain the connection between the device and a central station. And,

        **c.** Notify us if you know of any suspension of, removal of, change in, or impairment in any Protective Device listed in the declarations.

**B.** The following is added to **SECTION I – EXCLUSIONS**:

If the Protective Devices listed in the Declarations include a Central Station Reporting Fire Alarm or an automatic sprinkler system, we will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A. DEFINITIONS** of this endorsement.

If Protective Devices listed in the declarations include a Central Station Reporting Burglar Alarm or local burglar alarm  We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you failed to comply with any condition set forth in Paragraph **A.**

---

**HO 99 83 08 17**    Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.    **Page 1 of 1**

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 83 of 97

**HOMEOWNERS**
**HO 99 89 06 17**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE LINE COVERAGE

It is agreed the following additional coverage is added to Section I of the Homeowners 2 – Broad Form, Homeowners 3 – Special Form or Homeowners 5 – Comprehensive Form, whichever is applicable:

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Homeowners policy. The most we will pay for loss, damage or expense under this endorsement arising from any "one service line failure" is $10,000. Coverage provided under this endorsement does not increase any limit of liability under Section I.

**DEFINITIONS**

The following definitions are added:

1. "Covered service line"

   a. "Covered service line" means exterior underground piping and wiring, including permanent connections, valves or attached devices providing one of the following services to your "residence premises":

      (1) Communications, including cable transmission, data transmission, internet access and telecommunications;

      (2) Compressed air;

      (3) Drainage;

      (4) Electrical power;

      (5) Heating, including geothermal, natural gas, propane and steam;

      (6) Waste disposal; or

   (7) Water.

   b. A "covered service line" must be owned by you or you must be responsible for its repair or replacement as required by law, regulation or service agreement.

      Should repair or replacement be your responsibility, a "covered service line" ends at the precise location where your responsibility for such repair or replacement ends. However, in no event will a "covered service line" extend beyond the point of connection to the main service or utility line.

   c. "Covered service line" does not include:

      (1) That part of piping or wiring that runs through or under a body of water, including but not limited to a swimming pool, pond or lake;

      (2) That part of piping or wiring that runs through or under the dwelling or other structure; or

      (3) Piping or wiring that is not connected and ready for use.

2. "Earth movement" means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Subsidence or sinkhole collapse;

   d. Tsunami or volcanic action; or

   e. Any other naturally occurring earth movement including earth sinking, rising or shifting.

---

**HO 99 89 06 17**

**HOMEOWNERS – Service Line Coverage**

3. "One service line failure" means: If an initial "service line failure" causes other "service line failures," all will be considered "one service line failure." All "service line failures" that are the result of the same event will be considered "one service line failure."

4. "Service line failure" means a leak, break, tear, rupture, collapse or arcing of a "covered service line" not otherwise excluded by this endorsement. A "service line failure" may be caused by, but is not limited to, the following perils:

   a. Wear and tear, marring, deterioration or hidden decay;

   b. Rust or other corrosion;

   c. Mechanical breakdown, latent defect or inherent vice;

   d. Weight of vehicles, equipment, animals or people;

   e. Vermin, insects, rodents or other animals;

   f. Artificially generated electrical current;

   g. Freezing or frost heave;

   h. External force from a shovel, backhoe or other form of excavation; or

   i. Tree or other root invasion.

   "Service line failure" does not include blockage or low pressure of a "covered service line" when there is no physical damage to the "covered service line."

**SECTION I – PROPERTY COVERAGES**

The following coverages are added, subject to the limit provided under the Agreement section of this endorsement:

1. **Damages to "Covered Service Line"**

We will pay for physical loss or damage to your "covered service line" that is the direct result of a "service line failure."

2. **Excavation Costs**

With respect to your "covered service line" that is damaged as the result of a "service line failure," we will pay the necessary and reasonable excavation costs that are required to repair or replace the damaged "covered service line."

3. **Expediting Expenses**

With respect to your "covered service line" that is damaged as the result of a "service line failure," we will pay the reasonable extra cost to:

   a. Make temporary repairs; and

   b. Expedite permanent repairs or permanent replacement.

4. **Loss of Use**

Coverage for Additional Living Expense and Fair Rental Value, as described under **Coverage D – Loss of Use,** is extended to the coverage provided by this endorsement.

5. **Outdoor Property**

We will pay for your outdoor property, including but not limited to trees, shrubs, plants, lawns, walkways and driveways, that is damaged as a result of a "service line failure" or that is damaged during the excavation of your "covered service line" following a "service line failure."

**SECTION I - EXCLUSIONS**

The following exclusions are added:

1. We will not pay for loss or damage to:

   a. Septic systems, including leach fields, septic tanks, pumps, motors or piping that runs from the septic tank to the

---

**HO 99 89 06 17**    **Page 2 of 4**

**HOMEOWNERS – Service Line Coverage**

leach fields, other than loss or damage to covered waste disposal piping running from your dwelling or other structure to a septic tank;

**b.** Water wells, including well pumps or motors;

**c.** Heating and cooling systems, including heat pumps; or

**d.** Sprinkler system pumps, motors or heads.

**2.** We will not pay for loss or damage to a "covered service line" that is damaged while it is being installed, dismantled or repaired. However, this exclusion shall not apply if a covered "service line failure" necessitated such installation, dismantling or repair.

**3.** We will not pay to clean up or remove pollutants, hazardous waste or sewage.

**4.** We will not pay under this endorsement for loss or damage caused by or resulting from any of the following causes of loss:

**a.** Fire; or water or other means used to extinguish a fire;

**b.** Explosion;

**c.** Lightning; windstorm or hail; smoke; aircraft; riot or civil commotion; theft; breakage of glass;

**d.** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; or water that backs up or overflows from a sewer, drain or sump; or

**e.** "Earth movement," except for "earth movement" that results from the ground thawing after a freeze.

**5.** We will not pay additional costs incurred for loss or increased usage of water, natural gas, propane or any other service caused by or resulting from a "service line failure."

**DEDUCTIBLE**

We will pay only that part of the loss that exceeds $500. No other deductible applies to this coverage.

**SECTION I - CONDITIONS**

The following conditions are added:

**1. Environmental, Safety and Efficiency Improvements**

If a "covered service line" requires replacement due to a "service line failure," we will pay your additional cost to replace with materials that are better for the environment, safer for people or more energy or water efficient than the materials being replaced.

However, we will not pay to increase the size or capacity of the materials and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not increase the limit that applies to this endorsement.

**2. Loss Settlement**

Losses under this endorsement will be settled as follows:

**a.** Our payment for damaged covered property will be the smallest of:

**(1)** The limit of liability that applies to this endorsement;

**(2)** The cost to repair the damaged property;

**(3)** The cost to replace the damaged property on the same premises; or

**(4)** The necessary amount actually spent to repair or replace the damaged property.

---

**HO 99 89 06 17**                                            **Page 3 of 4**

**HOMEOWNERS – Service Line Coverage**

    **b.** Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

    **c.** You are responsible for the extra cost to alter or relocate "covered service lines," unless such alteration or relocation is required by law or ordinance.

**HO 99 89 06 17**                                                      **Page 4 of 4**

**HOMEOWNERS**
**HO 99 90 06 17**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HOME SYSTEMS PROTECTION

It is agreed the following additional coverage is added to **SECTION I** of your Homeowners 2 – Broad Form, Homeowners 3 – Special Form or Homeowners 5 – Comprehensive Form, whichever is applicable:

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Homeowners policy. The most we will pay for loss, damage or expense under this endorsement arising from any "one home system breakdown" is $50,000. Coverage provided under this endorsement does not increase any limit of liability under **SECTION I**.

**DEFINITIONS**

The following definitions are added:

1. "Covered home equipment"

   a. "Covered home equipment" means property covered under **Coverage A – Dwelling, Coverage B – Other Structures** or **Coverage C – Personal Property**:

      (1) That generates, transmits or utilizes energy; or

      (2) Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

      "Covered home equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

   b. None of the following is "covered home equipment":

      (1) Supporting structure, cabinet or compartment;

      (2) Insulating material associated with "covered home equipment";

      (3) Water piping other than boiler feedwater piping, boiler condensate return piping or water piping connected to a heating or air conditioning system;

      (4) Wastewater piping or piping forming a part of a fire protective sprinkler or irrigation system;

      (5) Buried or encased piping or buried vessels, however, interior buried or encased piping connected to a heating or air conditioning system is "covered home equipment";

      (6) Software or electronic data;

      (7) Drones or any equipment mounted on a drone; or

      (8) Riding lawn mowers or tractors.

2. "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

3. "Electronic circuitry impairment" means an accidental event involving "electronic circuitry" within "covered home equipment" that causes "covered home equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. An "electronic circuitry impairment" must also meet each of the following conditions:

   a. We shall determine that the reasonable and appropriate remedy to restore such "covered home equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered home equipment."

---

HO 99 90 06 17

**HOMEOWNERS – Home Systems Protection**

**b.** The "covered home equipment" must be owned or used by you, or members of your family who reside with you.

**c.** None of the following is an "electronic circuitry impairment":

**(1)** Any condition that can be reasonably remedied by:

**(a)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

**(b)** Rebooting, reloading or updating software or firmware; or

**(c)** Providing necessary power or supply.

**(2)** Any condition caused by or relating to:

**(a)** Incompatibility of the "covered home equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

**(b)** Insufficient size, capability or capacity of the "covered home equipment."

**(3)** Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

**4.** "Equipment breakdown"

**a.** "Equipment breakdown" means a sudden and accidental:

**(1)** Mechanical breakdown;

**(2)** Electrical breakdown; or

**(3)** Bursting, cracking or splitting of "covered home equipment" that results in direct physical damage and requires repair or replacement of all or part of the damaged "covered home equipment."

**b.** None of the following is an "equipment breakdown":

**(1)** Rust, corrosion, erosion, deterioration or gradual loss of efficiency or functionality of "covered home equipment";

**(2)** Leakage or seepage at or from any connection, valve, fitting, shaft or seal;

**(3)** Any programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving data or media of any kind;

**(4)** Complete or partial interruption of electrical power, fuel or water supply, whether deliberate or accidental;

**(5)** Any condition which can be corrected by resetting, recalibrating or by the performance of maintenance; or

**(6)** Cosmetic or other damage that does not impair functionality.

**5.** "Home system breakdown" means an "equipment breakdown" or "electronic circuitry impairment."

**6.** "One home system breakdown" means: If an initial "home system breakdown" causes other "home system breakdowns," all will be considered "one home system breakdown." All "home system breakdowns" that are the result of the same event will be considered "one home system breakdown."

**SECTION I – PROPERTY COVERAGE**

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 89 of 97

**HOMEOWNERS – Home Systems Protection**

The following coverages are added, subject to the limit provided under the Agreement section of this endorsement unless otherwise specified below:

**1. Damage to "Covered Home Equipment"**

We will pay for direct physical damage to "covered home equipment" that is the result of a "home system breakdown" that occurs on or off the "residence premises." We will consider "electronic circuitry impairment" to be physical damage to "covered home equipment."

**2. Spoilage**

With respect to your refrigerated property, we will pay:

**a.** For physical damage due to spoilage that is the result of a "home system breakdown";

**b.** Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

We will pay up to $500 under this Spoilage coverage for any "one home system breakdown."

**3. Loss of Use**

Coverage for Additional Living Expense and Fair Rental Value, as defined under **Coverage D – Loss of Use**, is extended to the coverage provided by this endorsement.

**4. Expediting Expenses**

With respect to your "covered home equipment" that is damaged as the result of a "home system breakdown," we will pay the reasonable extra cost to:

**a.** Make temporary repairs; and

**b.** Expedite permanent repairs or permanent replacement.

**SECTION I - EXCLUSIONS**

Any exclusions in your policy for mechanical breakdown and electrical breakdown do not apply to this endorsement.

The following exclusions are added.

**1.** We will not pay for loss, damage or expense caused by or resulting from:

**a.** Electrical power surge or brown out, whether or not caused by lightning. However, with respect to Coverage C, when Sudden and Accidental Damage from Artificially Generated Electrical Current is a Peril Insured Against in your policy, we will pay for loss, damage or expense to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus, caused by or resulting from artificially generated electrical current.

**b.** Any of the following, whether the excluded peril occurs on or off the "residence premises":

**(1)** Fire (including fire resulting from a "home system breakdown"); or water or other means used to extinguish a fire;

**(2)** Explosion;

**(3)** Lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse;

**(4)** Vandalism, malicious mischief or theft;

**(5)** Flood, surface water, waves, tides, tidal waves, overflow of any body of

**HO 99 90 06 17**                                          **Page 3 of 4**

**HOMEOWNERS – Home Systems Protection**

water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump, and any other water damage including water damage resulting from a "home system breakdown"; or

(6) Any earth movement including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

c. Liquids of any type.

2. We will not pay for any property that is not "covered home equipment" except for refrigerated property to the extent it is covered under Spoilage.

**DEDUCTIBLE**

We will pay only that part of the loss that exceeds $500. No other deductible applies to this coverage.

**SECTION I - CONDITIONS**

The following conditions are added:

1. **Environmental, Safety and Efficiency Improvements**

   If "covered home equipment" requires replacement due to a "home system breakdown," we will pay your additional cost to replace with equipment that is better for the environment, safer for people, or more energy or water efficient than the equipment being replaced.

   However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not apply to the replacement of component parts or to any property to which actual cash value applies and does not increase any of the applicable limits.

2. **Loss Settlement**

   Losses under this endorsement will be settled as follows:

   a. Our payment for damaged covered property will be the smallest of:

      (1) The applicable limit of liability;

      (2) The cost to repair the damaged property;

      (3) The cost to replace the damaged property with like kind, quality and capacity on the same "residence premises"; or

      (4) The necessary amount actually spent to repair or replace the damaged property.

   b. Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

   c. If you do not repair or replace the damaged property within 24 months after the date of the "home system breakdown," then we will pay only the smaller of:

      (1) The cost it would have taken to repair or replace at the time of the "home system breakdown"; or

      (2) The actual cash value at the time of the "home system breakdown."

**HOMEOWNERS**
**HO 99 94 06 17**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESS ENTITY - COVERAGE ENDORSEMENT

The following provisions apply if a limited liability company, joint venture, partnership, or corporation is shown in the Declarations as the "Named Insured".

## DEFINITIONS

Paragraph **A.** is replaced by the following:

**A.** In this policy, "you" and "your" refer to the "named insured" or any natural person designated as a member or manager of the limited liability company (LLC), a partner of a joint venture or partnership, or an officer or director of an organization other than a limited liability company, joint venture or partnership, but only while such person is residing within the "residence premises", and the spouse of such person if a resident in the same household. "We", "us" and "our" refer to the Company providing this insurance.

## SECTION II – LIABILITY COVERAGES

If the Dwelling Rental Activities Coverage Endorsement is not attached to this policy:

Paragraph **A. Coverage E – Personal Liability** is replaced by the following:

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies and such property damage or bodily injury occurs at the "residence premises" and arises out of the ownership, maintenance, or use of the "residence premises" we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable.

2. Provide a defense at our expense, by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

Paragraph **B. Coverage F – Medical Payments to Others** is replaced with the following:

**B. Coverage F – Medical Payments to Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of "bodily injury" caused by an "occurrence" to which this coverage applies, provided that such "occurrence" occurs at the "residence premises" and arises out of the ownership, maintenance, or use of the "residence premises". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and prosthetic devices. Medical expenses do not include expenses for funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only

1. To a person at the "residence premises" with the permission of an "insured"; or

2. To a person off the "residence premises", if the "bodily injury" arises out of a condition at the "residence premises" or the ways immediately adjoining.

## DWELLING RENTAL ACTIVITIES COVERAGE

---

**HO 99 94 06 17**   Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.   **Page 1 of 2**

90 of 96

**HOMEOWNERS – Business Entity – Coverage Endorsement**

If the Dwelling Rental Activities Coverage Endorsement is attached to this Policy, **SECTION II – LIABILITY Coverages,** Paragraph **A. Coverage E – Personal Liability** and Paragraph **B. Coverage F – Medical Payments to Others,** of that Endorsement shall govern.

**HO 99 94 06 17**        Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.        **Page 2 of 2**

91 of 96

Case 7:24-cv-07153-NSR-JCM    Document 1-1    Filed 09/20/24    Page 93 of 97

# A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

> • a person has taken adverse action against you because of information in your credit report;
> • you are the victim of identity theft and place a fraud alert in your file;
> • your file contains inaccurate information as a result of fraud;
> • you are on public assistance;
> • you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

Case 7:24-cv-07153-NSR-JCM   Document 1-1   Filed 09/20/24   Page 95 of 97

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br>b. Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act<br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050<br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br>d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street SW<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or<br>Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC 20580<br>(877) 382-4357 |

FILED: SULLIVAN COUNTY CLERK 07/31/2024 02:40 PM
NYSCEF DOC. NO. 1

INDEX NO. E2024-1238
RECEIVED NYSCEF: 07/31/2024

FILED: SULLIVAN COUNTY CLERK 07/31/2024 02:40 PM INDEX NO. E2024-1238
NYSCEF DOC. NO: 1   Case 7:24-cv-07153-NSR-JCM   Document 1-1   Filed 09/20/24   Page 97 of 97   RECEIVED NYSCEF: 07/31/2024

**THIS ENDORSEMENT AUTHORIZES THE POLICY.**

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the GUARD insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy.  If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

Matthew O'Connor
General Counsel and Secretary

Sy Foguel, ACAS, FILAA
Chief Executive Officer and President

---

IL 99 00 08 13                                                           Page 1 of 1